IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| THE JARSON CORPORATION, | ) | |
| | ) | |
|    Plaintiff/Counter-Defendant, | ) | |
| | ) | |
| v. | ) | NO. 3:20-cv-00377 |
| | ) | |
| DONALD R. GARRETT, JR., | ) | JUDGE CAMPBELL |
| | ) | MAGISTRATE JUDGE FRENSLEY |
|    Defendant/Counter-Plaintiff. | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff/Counter-Defendant the Jarson Corporation's ("Jarson") Motion for Summary Judgment. (Doc. No. 32). Defendant/Counter-Plaintiff Donald R. Garrett, Jr. ("Garrett") filed a response in opposition (Doc. No. 36) and Jarson filed a reply (Doc. No. 39). For the reasons discussed below, Jarson's motion will be **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Jarson hired Garrett in the spring of 2015. (Doc. No. 37 ¶ 7; Doc. No. 40 ¶ 1). Garrett relocated to Tennessee at Jarson's request and received relocation expenses of $150,000 from Jarson. (Doc. No. 37 ¶¶ 7-8; Doc. No. 40 ¶¶ 1-4). At Jarson's request, Garrett signed a promissory note (the "Note") wherein he agreed to repay Jarson $150,000 by December 31, 2015. (Doc. No. 1-1; Doc. No. 37 ¶¶ 10-15; Doc. No. 35-3 at PageID # 166; Doc. No. 40 ¶ 4). Garrett did not repay the Note by December 31, 2015. (Doc. No. 35-17 ¶ 7). Garrett continued to work for Jarson until April 2019. (Doc. No. 37 ¶ 42).

At the time Garrett was hired, his immediate supervisor, Tim Fackler ("Fackler"), informed him that he would receive bonuses based primarily on Jarson's profitability, generally 30% to 40% of his base pay. (Doc. No. 40 ¶ 11). Despite receiving a base salary of around $160,000, Garrett

only received annual bonuses between $16,000 and $30,000 during his employment with Jarson. (Doc. No. 40 ¶¶ 1, 16). During the same timeframe, Fackler, whose base salary was 15% higher than Garrett's, received bonuses of more than $500,000. (Doc. No. 38-3 at PageID #396; *see also* Doc. No. 38-4 at PageID # 423-24). Fackler understood that Garrett's bonuses were reduced because he was "in the hole" to Jarson because of the relocation loan. (Doc. No. 40 ¶ 21). Based on his conversations with Fackler, Garrett understood that Jarson withheld bonuses of $50,000 in 2016, $40,000 in 2017, and $90,000 in 2018. (Doc. No. 38-1 at PageID # 323; Doc. No. 35-15).

On May 4, 2020, Jarson filed suit against Garrett, alleging claims of breach of contract and fraudulent representation. (Doc. No. 1). Jarson alleges the current remaining balance on the debt is $137,700. (*Id*. ¶ 22). Garrett brings counterclaims against Jarson for breach of contract, unjust enrichment, and quantum meruit. (Doc. No. 23). Jarson moves for summary judgment on all claims. (*See* Doc. No. 32).

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party, and draws all reasonable inferences in favor of the nonmoving

party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper jury question. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

### III. ANALYSIS

#### A. Jarson's Breach of Contract Claim

To establish a breach of contract under Tennessee law, a plaintiff must show "(1) the existence of an enforceable contract, (2) non-performance amounting to a breach of the contract, and (3) damages caused by the breached contract." *Nw. Tenn. Motorsports Park, LLC v. Tenn. Asphalt Co.*, 410 S.W.3d 810, 816–17 (Tenn. Ct. App. 2011). Jarson argues that the foregoing elements are satisfied because it is undisputed that Garrett executed the Note and did not repay Jarson $150,000 by December 31, 2015. In his response, Garrett points to his deposition testimony regarding the amounts he was told were being applied to his balance, arguing that there are questions of fact. Viewing the facts in the light most favorable to Garrett, the Court finds that there are material facts in dispute regarding damages. Accordingly, summary judgment is inappropriate.

#### B. Jarson's Fraud Claim

To recover for fraudulent misrepresentation under Tennessee law, a plaintiff must prove: (1) the defendant made an intentional misrepresentation of a material fact; (2) the defendant made the representation "knowingly" without belief in its truth, or "recklessly," without regard to

whether it was true or false; (3) the plaintiff justifiably relied on the misrepresentation and suffered damages; and (4) the misrepresentation relates to an existing or past fact.[1] *Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012). In the present case, Jarson contends that when Garrett executed the Note, he made a material representation that he would pay Jarson $150,000 on or before December 31, 2015. (Doc. No. 33 at 7). Jarson asserts that Garrett executed the Note "with no intent to make payment in full by the date it was owed." (*Id*.). In his response, Garrett points to evidence that he had more in equity than the amount of the Note at the time he executed the Note. (*See* Doc. No. 38-1 at PageID # 312; Doc. No. 40 ¶ 6)). Garrett argues that a reasonable jury could find that Garrett did not have intent to deceive Jarson. The Court agrees. Accordingly, Jarson's motion will be denied as to its fraud claim.

## C. Garrett's counterclaims

Jarson argues that summary judgment is appropriate on Garrett's breach of contract counterclaim because he has not produced a written contract and admits that there was not a written agreement concerning bonuses. (Doc. No. 33 at 8 (citing Doc. No. 37 ¶ 41); Doc. No. 39 at 5 (citing Doc. No. 37 ¶ 40)).[2] Jarson seeks summary judgment on Garrett's unjust enrichment counterclaim on the basis that the Counter-Complaint does not "identif[y] the benefit allegedly conferred upon Jarson." (Doc. No. 33 at 10 (citing Amended Counter-Complaint, Doc. No. 23)).[3]

---

[1] While Jarson labels Count II as fraudulent representation, its argument sounds in promissory fraud. Because neither party briefed promissory fraud, the Court will not address it.

[2] As a contract can be express, implied, written, or oral under Tennessee law, *see ICG Link, Inc. v. Steen*, 363 S.W.3d 533, 543 (Tenn. Ct. App. 2011), the fact that the alleged contract was not written down does not negate the existence of an enforceable contract.

[3] Under Tennessee law, the essential elements of an unjust enrichment claim are: "1) [a] benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and 3) acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005) (citation and internal quotation marks omitted). "The most significant requirement ... is that the benefit to the defendant be unjust." *Id*. "A benefit is any form of advantage that has a measurable value including the advantage of being saved from an expense or loss." *Id*.

Similarly, Jarson seeks summary judgment on Garrett's quantum meruit counterclaim on the basis that the Counter-Complaint "fail[s] to demonstrate that [Garrett] provided valuable services for which he was not compensated." (Doc. No. 33 at 11).[4] In his response, Garrett points to evidence that Jarson retained or withheld $106,000 of his bonus compensation over the course of his employment to be applied to his debt under the Note. (Doc. No. 38-1 at PageID # 323; *see also* Doc. No. 35-15). He asserts that Jarson breached its contract with him or will be unjustly enriched by not crediting the amounts of his withheld bonuses to any amounts due under the Note. Jarson points to Fackler's deposition testimony, arguing that Fackler rejected Garrett's claims that it awarded him bonus amounts and subsequently withheld portions to apply to his debt under the Note. (*See* Doc. No. 33 at 9; Doc. No. 37 ¶ 55). Garrett disputes this and points to Fackler's testimony that his bonuses should have been higher. (Doc. No. 37 ¶ 55 (citing Doc. No. 38-4 at PageID # 422); *see also* Doc. No. 40 ¶ 22).

Viewing the facts in the light most favorable to Garrett, the Court finds that there are material questions of fact in dispute as to the amounts and circumstances of Garrett's bonus compensation. Thus, Jarson has failed to establish the absence of material facts in dispute on Garrett's counterclaims. Accordingly, summary judgment is inappropriate.

An appropriate order will enter.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

---

[4] "A quantum meruit action is an equitable substitute for a contract claim pursuant to which a party may recover the reasonable value of goods and services provided to another if the following circumstances are shown: (1) There is no existing, enforceable contract between the parties covering the same subject matter; (2) The party seeking recovery proves that it provided valuable goods or services; (3) The party to be charged received the goods or services; (4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and (5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment." *Doe v. HCA Health Servs. of Tennessee, Inc.*, 46 S.W.3d 191, 197–98 (Tenn. 2001) (citation omitted).